AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | |
| CLOVIS ROCHE WILLIAMS, | ) | Case No.   8:26-mj-56 (MJK) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) of December 24, 2025 through February 19, 2026 in the county of St. Lawrence in the Northern District of New York and elsewhere the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1591 | Sex trafficking of a child |
| 18 U.S.C. 2251(a) | Sexual exploitation of a child |

This criminal complaint is based on these facts:
See attached affidavit

☐    Continued on the attached sheet.

_____
*Complainant's signature*
HSI SA Tyler Marshall
_____
*Printed name and title*

Attested to by the affiant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Date:    __March 17th, 2026__

_____
*Judge's signature*

City and State:    __Syracuse, New York__        Hon. Mitchell Katz, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Tyler Marshall, being first duly sworn, do hereby depose and state as follows:

## INTRODUCTION

1.      I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, HSI. I have been a Special Agent since April 2022 and have received training in United States laws at the Federal Law Enforcement Training Center in Glynco, Georgia. I am currently assigned to the HSI Border Enforcement Security Taskforce ("BEST") in Massena, New York. BEST is tasked with the enhancement of border security by fostering coordinated efforts among federal, state, and local border and law enforcement officials to protect the United States' border cities and communities from trans-national crime, including but not limited to those involving child exploitation, drug trafficking, arms smuggling, bulk-cash smuggling, human trafficking and smuggling, violence, and kidnapping along and across the international borders of the United States.

2.      In addition to my position as a Special Agent, I served as a Border Patrol Agent ("BPA") with the United States Border Patrol ("USBP") from 2011 until 2022. Throughout my time with the USBP, I held many positions including Patrol Agent, Prosecution Agent, and Intelligence Agent on the Northern and Southern Border. My duties as an Intelligence Agent with USBP included investigating crimes involving human smuggling and human trafficking tied to Transnational Criminal Organizations.

3.      I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority. I am a "Federal law enforcement officer," within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the

1

criminal laws and duly authorized by the Attorney General to request a search warrant. I am charged with conducting criminal investigations of alleged violations of federal criminal statutes, including but not limited to Title 8, Title 18, Title 19, Title 21, and Title 31 of the United States Code.

4.    I have participated in investigations where I have conducted physical surveillance and reviewed and analyzed telephone records of those engaged in violating federal statutes. I have written and executed search warrants for electronic devices, reviewed the evidence contained within, and presented that data as evidence during criminal investigations. Additionally, I have been involved in writing search warrants for real property and residences within the Northern District of New York (NDNY).

5.    The facts contained in this affidavit are known to me through statements and reports received from other law enforcement officers. This affidavit is made in support of a criminal complaint charging Clovis Roche Williams ("Williams") with violating Title 18, United States Code, Sections 1591 and 2251.

## PROBABLE CAUSE

### Overview

6.    In January 2026, a 15-year-old girl (V1) was reported missing in the Gouverneur Police Department's (GPD) area of responsibility. When she returned home in February 2026, V1 stated she had been raped. V1 had a cellphone that she stated contained images and videos of V1 and an adult man, later identified as Williams, engaged in sexually explicit conduct. HSI TFO Polniak received that information from GPD and agreed to assist in their investigation by searching the cellphone V1 provided to them.

2

7.     As detailed below, the investigation, including statements from V1 and an examination of the cellphone, has revealed that V1 and Williams communicated online while V1 was in Gouverneur. Williams asked V1 if she wanted to "make money" by working for Williams in New York City. Williams purchased a bus ticket for V1 to travel from Gouverneur to New York City and V1 did so. In New York City, Williams arranged for V1 to engage in sex acts with customers of his in exchange for money, which was provided to Williams. Williams also engaged in sexually explicit conduct with V1, which was recorded using the cellphone that Williams shared with V1. Williams caused advertisements to be posted on the internet in which V1 was depicted as available for commercial sex services.

**V1's Statements**

8.     During interviews, V1 stated the following in sum and substance.

9.     On or about December 24, 2025, V1 and Williams began communicating through Instagram's instant messaging feature. V1 knew Williams as "Kobra." V1 told Williams her age, 15 years old, and where she went to school. Williams told V1 that she was "grown" but needed to finish school. Williams told V1 that she could make a lot of money if she worked for him in New York City. On January 21, 2026, Williams purchased a bus ticket through Trailways and Greyhound bus lines for V1 using another name for V1 so that the ticket would not get flagged. At approximately 5:40 that evening, V1 boarded the bus for which Williams purchased her ticket and traveled to New York City where Williams met her.

10.     Williams took V1 to his residence in Bronx, New York. There, he stripped V1 down to her underwear and a top. When Williams told V1 that she would engage in commercial sex to make money, V1 told Williams she did not want to and that she wanted to leave. Over the following weeks, Williams arranged "dates" for V1 to engage in commercial sex with customers

3

of Williams. Customers paid Williams either in cash or through digital payment methods like Zelle or Venmo. Williams gave V1 a cellphone ("Cellphone") that he and she could access, so that she had a phone for "dates."

11.     While V1 was at Williams' residence, he set up "dates" for V1 during which she engaged in sex acts with customers in exchange for money. The telephone number listed in those advertisements is the number for the Cellphone. The pictures in the advertisements depict V1. V1 stated Williams took sexually explicit images and videos of her using the Cellphone.

12.     Williams arranged for the commercial sex dates by communicating with customers using the Cellphone. Williams arranged the location where V1 would meet the customers, discussed the sex acts the customers expected V1 to perform, and agreed to the price with the customers.

13.     The customers paid Williams through CashApp or paid V1 in cash. In instances where V1 received cash, she had to give all the cash to Williams who then gave her back a portion of it. In instances where customers paid Williams by CashApp, Williams would provide V1 with a portion of the payment. Williams provided V1 with condoms and lubricants; if V1 did not use the condoms then Williams threatened to hurt her. Williams made a "special bath" to stop V1's period when she was menstruating.

14.     While at the residence, Williams and his coconspirators punched V1, choked V1, hit her with a Hennessy liquor bottle, and cut her with a knife. V1 stated she believed she was drugged and at some point, lost consciousness.

15.     With the help of people she knows in New York City, V1 got away from Williams and traveled home. She took the Cellphone with her and provided it to GPD.

4

**Bus Ticket**

16.     On February 26, 2026, law enforcement confirmed with a representative for Trailways that their records show Williams purchased a one-way ticket in the name V1 stated he used for her that departed Gouverneur on January 21, 2026, at 5:30 p.m. and arrived in New York City at 8:47 p.m.  Here is a copy of the receipt Trailways generated for this purchase:

```
                                                                    RECEIPT
 Trailways Transportation System                         AGENT:
 FROM: GOUVERNEUR, NY                      DEPART: 21Jan26 5:30PM   AUTH CODE:    640786
 TO:  NEW YORK (P.A.B.T.), NY             ORDER:  8728918          AVS:             Y
 PASSENGER                  TICKET                                 BAGS           FARE

 ▮▮▮▮▮▮▮▮▮▮              ONE WAY                                                $55.51


 PROCESSED BY:    Trailways Transportation System (800-858-8555)
 SUBTOTAL:              $55.51  PAYMENT:      VIRTUAL TERMINAL
 Processing Fee:        $2.99   DATE:         JAN 20 2026 8:47PM ET
 TOTAL PAID:            $58.50  CUSTOMER NAME: Clovis Williams




                                 SIGNATURE: _____
```

**Cellphone Search Results**

17.     On February 24. 2026, this Court issued a search warrant authorizing examination of the Cellphone.  Pursuant to that warrant, TFO Polniak manually searched the Cellphone and then used forensic tools to extract data from it, which TFO Polniak has reviewed and which corroborates V1's statements.  The Cellphone was manufactured outside the state of New York.

18.     In the photo gallery on the Cellphone, there are six videos of minors engaged in sexually explicit conduct.  Three of the videos depict a black male, identified by V1 as Williams, engaged in vaginal intercourse with V1 and another minor female identified by V1 as V2.  Those three videos appear to have been recorded by Williams based on the point of view depicted in the videos. The remaining three videos depict V1 and V2 laying next to each other on a bed, facedown,

5

exposing their vaginas and anuses in a lewd and lascivious manner. These videos appear to have been filmed by Williams who is zooming in on their vaginal areas.

19.    The Cellphone's photo gallery also contained approximately 35 images depicting V1 and other females. In some images, their vaginal and anal areas are exposed. Some of the images depict V1 and the other females fully naked and others depict them dressed provocatively.

20.    The Cellphone also includes text messages from Williams to others, including on January 28, 2026, when Williams asked a coconspirator to create online advertisements for commercial sex dates with V1. Williams asked the coconspirator to "post up if you haven't already" and clarified he meant for "outcalls n car dates." Based on my training, experience, and knowledge of the investigation, I know that "outcalls n car dates" is a reference to commercial sex dates.

21.    The Cellphone contains messages related to commercial sex acts involving V1, including texts exchanged on February 15, 2026, in which a customer asked for a "half hour" and "cov." meaning a 30-minute appointment for commercial sex acts with a condom. The user of the Cellphone, which based on the context appears to be V1, responded "150" meaning $150. On February 14, 2026, there were text messages exchanged between the user of the Cellphone, which based on the content appears to be Williams, and a customer about V1. The messages include Williams' CashApp account information. Williams advised the customer, "No cum in her, if u want to cum in her mouth extra 75."

## CONCLUSION

22.    Based on the forgoing, there is probable cause to believe that Williams **(i)** did knowingly recruit, entice, and harbor, V1 knowing or in reckless disregard of the fact that V1 has not attained the age of 18 years and will be caused to engage in a commercial sex act, in violation

6

of Title 18, United States Code, Section 1591(a)(1) and (b)(2), and **(ii)** did employ, use, persuade, induce, entice, and coerce any minor to engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct where that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2251(a) and (e).

Special Agent Tyler Marshall
Homeland Security Investigations

Attested to by the applicant in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure this 17th day of March 2026.

HON. MITCHELL J. KATZ
UNITED STATES MAGISTRATE JUDGE